IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOHN GORDON ELLIOT,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

Case No. 3:16-cv-02351-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff John Gordon Elliot brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is REVERSED AND REMANDED for further proceedings.

## BACKGROUND

In January 2013, plaintiff protectively filed an application for SSI, alleging disability due to a psychotic disorder beginning on November 25, 2013. His claim was denied both initially and upon reconsideration. On May 4, 2015, plaintiff appeared at a hearing before an Administrative Law Judge

("ALJ") and testified. Plaintiff was represented by an attorney. A vocational expert ("VE") also testified at the hearing. In a written decision issued June 3, 2015, the ALJ found the plaintiff not disabled. After the Appeals Council denied plaintiff's request for review, this complaint followed.

## STANDARD OF REVIEW

A federal court "shall have the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. 405(g) (ellipses omitted); see *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (citations omitted).

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th. Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. See *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

PAGE 2 – OPINION AND ORDER

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the application date of January 14, 2013. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments as of the alleged onset date: psychotic disorder not otherwise specified and cannabis abuse in claimed remission. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"). The ALJ found plaintiff has the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: He could sustain concentration, persistence, an pace fro only simple, routine, repetitive tasks, one-to two-steps in nature. He would not be able to sustain work of a more complex nature. He can have no public contact. He would work best working alone, not as part of a team. He should avoid exposure to severe workplace hazards, such as working at heights, or around machinery with moving parts.

Tr. 22.

At step four, the ALJ concluded plaintiff could not perform any of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, however, the ALJ found that plaintiff could perform work existing in the national economy; specifically, the vocational expert testified that plaintiff could work as an industrial cleaner, lab equipment cleaner, and hand packager. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his application for benefits.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors in reaching its decision: 1) the ALJ improperly relied on the testimony of the VE during step five, which included the identification of jobs that were inconsistent with plaintiff's RFC; and 2) the ALJ improperly rejected the opinion of treating provider, Dr. Ian Starr. I will address each alleged error in turn.

### I. *The Step Five Analysis*

The Commissioner bears the burden of proving that claimant is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920. To meet this burden in the present case, the ALJ relied on VE testimony at step five. The VE testified that the following jobs are consistent with plaintiff's RFC: (1) industrial cleaner, (2) lab equipment cleaner, and (3) hand packager. All of the jobs listed by the VE required level two reasoning. The plaintiff's RFC, however, limited him to "performing one- and two-step tasks." Tr. 22.

Importantly, the Ninth Circuit has determined that jobs requiring level two reasoning are inconsistent with a limitation to one- to two-step tasks. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). Under *Rounds*, where the jobs recited by the VE are inconsistent with the RFC, the ALJ is required to elicit a reasonable explanation for the apparent conflict before relying on the VE testimony. Here, the Commissioner concedes that the ALJ erred by failing to recognize and address the apparent conflict. Thus, the ALJ committed reversible error in improperly relying on the VE's testimony.

### II. *Rejection of Dr. Starr's Opinion*

In addition to the error at step five, plaintiff contends that the ALJ improperly rejected the testimony of Dr. Starr, plaintiff's treating physician. Though plaintiff extensively briefed this issue, the Commissioner neglected to address it in her response.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ gives specific and legitimate reasons for doing so that are based on substantial evidence in the record. *Lingenfelter v. Astrue*, 504 R.3d 1028, 1042 (9th Cir. 2007). When the medical record is uncontroverted, however, the ALJ must give "clear and

PAGE 4 – OPINION AND ORDER

convincing" reasons for rejecting it. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). Dr. Starr began treating plaintiff on February 18, 2014 and subsequently diagnosed plaintiff with psychosis, not otherwise specified. After treating plaintiff for over a year, on May 5, 2015, Dr. Starr offered an opinion regarding plaintiff's symptoms, impairments, and the resulting work-related limitations.

Dr. Starr observed that plaintiff generally suffers from disorganization in both thought and behavior. He also noted marked limitations in concentration, persistence or pace, and in social functioning. When considering specific work-related limitations, Dr. Starr found that plaintiff was markedly limited in his ability to (1) sustain an ordinary routine without special supervision; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting extreme behaviors; and (8) respond appropriately to changes in a work setting. As a consequence of plaintiff's diagnosis and related limitations, Dr. Starr determined that plaintiff would likely miss two or more days a month from even a simple and routine sedentary job.

The ALJ chose to give Dr. Starr's opinion limited weight and ultimately rejected his conclusion as to plaintiff's disability. In doing so, the ALJ reasoned that Dr. Starr's opinion was not supported by the evidence of record, citing three primary deficiencies. Instead, the ALJ preferred the opinion of the State agency doctors "because they supported their recommended limitations with persuasive explanation." Tr. 30. I will address each of the ALJ's provided reasons in turn.

First, the ALJ stated that "Dr. Starr did not explain how disorganized thought and behavior produced the limitations he suggested." Tr. 29. Plaintiff argues out that the ALJ's reasoning here is flawed. She avers that disorganized thought and behavior are symptoms of her mental health condition. The work-related limitations identified by Dr. Starr directly relate and follow logically from those

PAGE 5 – OPINION AND ORDER

symptoms. Just as there is no need to explain how a broken leg may limit a person's ability to walk, Dr. Starr need not explain how disorganized thought and behavior limits plaintiff's ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance." Tr. 417.

Second, the ALJ found two examination reports (April 2013 and October 2013) to be inconsistent with Dr. Starr's opinion. The ALJ noted that the April 2013 examination report "showed the claimant's thought processes to be logical, goal-directed, and future focused." Tr. 30. When considered with in the context of the entire medical record, the April report is an outlier in a medical record that is otherwise consistent with Dr. Starr's opinion. An ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding psychological disability. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Accordingly, the occurrence of a symptom free period "must be 'read in the context of the overall diagnostic picture.'" *Id* at 1162.

Regarding the October 2013 report, the ALJ notes that plaintiff "denied any problems with mood, depression, anxiety, or auditory hallucinations." It is further noted that "[h]e was doing fine" and was "taking his prescribed medications," which he described as "effective." Upon review, however, the October 2013 report is, at best, ambiguous – and even then, still tends to support Dr. Starr's opinion. As an initial matter, the treatment provider noted that plaintiff was "25 minutes late, [and was] only seen for 5 min[utes]." Tr. 229. In addition, the provider's subsequent observations are contrary to the plaintiff's self reporting statements selected by the ALJ. The provider stated that plaintiff "is not able to manage his medications well . . . is not able to come into appointments a regular intervals (or on time) . . . [and] is in need of a much higher level of services." Tr. 231. Accordingly, when read in the context of the entire medical record, the April 2013 and October 2013 reports referenced by the ALJ do not weigh against the credibility of Dr. Starr's opinion.

Third, the ALJ stated that "Dr. Starr did not account for the [plaintiff's] noncompliance with medical treatment or . . . ongoing cannabis abuse." Tr. 30. The ALJ's concerns are further underscored by an acknowledgment that plaintiff's symptoms were diminished when regularly taking prescribed

PAGE 6 – OPINION AND ORDER

medication and avoiding marijuana. However, plaintiff rightly points out that isolated instances of improvement are not sufficient reason to reject the opinion of a treating provider. *Ghanim* at 1162 (9th Cir. 2014). The Ninth Circuit has also held that failure to seek mental health treatment is not an appropriate reason to doubt the mental impairments of a claimant. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Moreover, the record indicates that plaintiff's mental health condition is a causal factor relating to his noncompliance.

Here, the medical testimony of Dr. Starr is uncontroverted. There is nothing in the medical record – when considered in its entirety – that directly contradicts the findings of Dr. Starr. Rather, the opposite is true; the medical record tends to support, not discredit, the findings of Dr. Starr. To illustrate, plaintiff identifies examples throughout the record, where examiners (other than Dr. Starr) noted that plaintiff: 1) was not easily engaged and had poor eye contact; 2) was dysthymic and irritable; 3) reported hearing voices; 4) presented with cognitive delay; 5) displayed poor insight into his impairment and symptom triggers; 6) exhibited clinically significant distress/impairment in multiple areas of functioning. *See e.g.*, Tr. 245, 246. Because the medical record here does not contradict Dr. Starr's testimony, the ALJ must give "clear and convincing" reasons for rejecting it. *Lester* at 830-31 (9th Cir. 1996). While it is true that Dr. Starr's opinion would be more thorough if it included additional commentary regarding the effectiveness of medication and the issues related to noncompliance, this deficiency – taken together with the others asserted by the ALJ – fails meet the clear and convincing standard necessary to reject the uncontroverted testimony of a treating physician. Accordingly, the ALJ's rejection of Dr. Starr's testimony was improper.

### III. *Scope of Remand*

The Ninth Circuit has developed a three-step process to determine whether a Social Security appeal should be remanded for further proceedings or for an immediate award of benefits. *Smolen v. Chater*, 80F.3d 1273, 1292 (9th Cir. 1996). At step one, the reviewing court must determine whether the ALJ made a harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). At step two, the court reviews the

PAGE 7 – OPINION AND ORDER

record as a whole to determine whether the record is fully developed and free from conflicts, with all essential factual issues resolved. *Id.* Step two is the most important step because "the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citation omitted). If the record is fully developed, the court proceeds to step three and considers "whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (citations omitted). If the ALJ would be required to make such a finding, the court has discretion to remand for an immediate award of benefits. *Id.* Even when all three steps are satisfied, however, the court may remand for further proceedings if the record as a whole "creates serious doubt as to whether a claimant is, in fact, disabled within the meaning of the ... Act." *Id.* at 408 (citation and internal quotation marks omitted).

First, the Commissioner concedes that the ALJ committed legal error during step five of the analysis by relying on VE testimony inconsistent with Plaintiff's RFC. The ALJ committed further harmful error by improperly rejecting Dr. Starr's testimony. Accordingly, step one is satisfied.

Turning to step two, the record is not fully developed. The failure to incorporate all of plaintiff's limitations into the RFC and subsequent VE hypothetical requires further development of the record. See *Samples v. Comm'r of Soc. Sec. Admin.*, 466 Fed. Appx. 584, 586 (9th Cir 2012). As stated above, Dr. Starr's opinion and restrictions should be properly considered in the RFC and VE hypothetical. Also, as the Commissioner has conceded, the ALJ must hear new VE testimony which incorporates plaintiff's limitation of performing one- and two-step tasks found in the RFC. Because I have determined that the record is not fully developed and that further proceedings would serve a useful purpose there is no need to proceed to step three. Accordingly, the Commissioner's decision must be reversed and remanded for further proceedings.

/ / /

/ / /

/ / /

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 28th day of February 2018.

                                                Ann Aiken
                                      United States District Judge